The next matter on our calendar is in re bankruptcy Stuart Scott Snyder and we have an adversary proceeding within that bankruptcy. Thank you. Good morning, your honors, and if it pleases the court, my name is Scott Sharma and I represent the appellants in this matter, Stuart and Doreen Snyder. We're here today, your honor, because there was a decision out of a district court in New York, a multi-account complaint ultimately holding my clients liable on breaches of contract on two different grounds. Was it out of Connecticut, not New York, right? It was out of the Eastern District of New York, your honor. The original, the underlying complaint. The underlying complaint. The motion was filed for summary judgment in the non-dischargeability complaint that was brought into bankruptcy trying to hold those two obligations non-dischargeable. Summary judgment was granted. We took appeal from that to the district court. The district court affirmed and that brings us here today. What did your client do in the Eastern District? Didn't appear, was sanctioned, right? There was default judgment was entered for discovery violations, your honor. Right. So that was a sanction. It wasn't litigated. It was not litigated. But it was a sanction. It was a discovery sanction, yes, your honor. Well, it declined the opportunity to litigate. I wasn't there, your honor. I think it's clear from the record that the district court felt they hadn't complied with discovery obligations and on those grounds others entered judgment. No appeal taken from that. No appeal was taken from that. And many chances. He had many chances. They had many chances to, there was a previous two defaults that were vacated, correct? I believe so, your honor. Yes, there were defaults that had one, at least one default vacated. I'm not trying to contradict the record. It speaks for itself. But yes, ultimately default judgment was entered as a result of discovery violations. Why shouldn't that default judgment have preclusive effect? Because, your honor, in non-dischargeability proceedings, the core issue is one of intent, tortious intent. In order for a debt to be declared non-dischargeable, ultimately it comes down to some form of tortious intent. In the cause of action specifically in front of us today, it's defalcation in the breach of fiduciary duty, embezzlement, and a willful malicious injury. As you can see from the case law, it all comes down to some form of malicious, wrongful intent. There were no findings. The legal question is whether a default judgment that's rendered after four years of attempted litigation that's entered as a sanction, whether that can have preclusive effect in a subsequent bankruptcy. Well, it could, your honor, but the allegation here is that it didn't. You're agreeing that it can't. It can, yes. My case law admits that it can. Case law cited out in my brief. I'm not focusing my argument on that point. What I am focusing on, your honor, is that that judgment made, essentially held, just the two contracts were breached. It made no findings as to any intent. There were allegations in that complaint as to conversion, breach of fiduciary duty, and fraud. All of those counts were denied. Right, the default was only on the breach of contract. Correct, your honor. So. Those other allegations remain unlitigated. Correct, your honor. There's no collateral estoppel effect on an adverse decision. But the breach of contract action was involving a partnership, wasn't it? The allegation, the finding was that they were joint venturers, your honor. But even so. And the breach of that contract means that there was a breach of the fiduciary relationships among the joint venturers and partners, right? No, not necessarily, your honor. In order, first of all, I set forth in the briefing, in order to have a fiduciary duty under 523A4 is different than a standard for fiduciary duties under state law. It's determined by federal common law. They look, certainly, to the state law to inform their decision. But it's essentially a federal common law standard, and it's something more than- Do you find that there's a fiduciary duty that's owed by one partner to another? Actually, New Jersey, your honor. New Jersey doesn't have that. It's set forth in my briefing. No, they do not find. There are two, there is a series of case law that holds that in order for there to be a fiduciary duty to exist under 523A4, there has to be an express trust. A trust arrangement with a res and a trustee, etc. New Jersey appears to follow that case law. The case law set forth in my brief says that there are bankruptcy courts holding that partners don't hold fiduciary duties to each other under 523A4. Whereas, perhaps they do under other state law. The bankruptcy court and the district court just assumed, because the underlying judgment was from the Eastern District, that New York law applied. There was really no investigation into choice of law, was there? No, there wasn't, your honor. In fact, the district court didn't really explain itself when it applied New York law either, because it didn't necessarily have to. There was diversity of citizenship. You had New York plaintiffs, Connecticut defendants, and then you had, at least it's uncontested as to this first investment, that the agreement centered around New Jersey real estate projects. So the district court chose New York law, it didn't really explain itself, and it hasn't really been addressed until- I mean, in terms of the key issues, is there a difference in terms of the various laws? Certainly New Jersey, your honor. Connecticut, I believe, is somewhat similar to New York as far as state law, what they hold, as far as the fiduciary duty standard. I mean- A very big one, as you pointed out, is that New York holds that the parties in a joint venture owe each other a fiduciary duty, and New Jersey does not. Correct, your honor. I see my time has- What do you say the federal fiduciary duty law is? Well, we're talking federal fiduciary law under 523A4, your honor. And that is a different standard than- Which is, fill in the blank. Which is that it is a, in New Jersey, it is basically that there is a fiduciary duty exists when there's an actual trust. So under federal law, you're saying that federal bankruptcy law, you get a different result depending on what state you're in? Yes, your honor, you do. You do, because it is- The issue of choice of law should have been raised in the Eastern District of New York. And I don't know if it was raised or not, but if that default judgment is binding, does it matter what law? I mean, aren't we beyond the issue of what law applies? Because in essence, you're attacking the judgment. Not for purposes of non-dischargeability, your honor. And that shows in some of the cases the district court relied on. If I was just appealing to this court from a district court adjudication on that issue. The judgment makes a number of findings, or at least implicitly, that they are partners or joint venturers, that there is a fiduciary duty, that they are damaged in the amount of $450,000, that Doreen is liable. If that judgment has preclusive effect, are you able now to go back and say, no, there should have been a different law that applied in that case? I think you can, your honor, because this is a non-dischargeability proceeding, as opposed to a proceeding in district court or the civil- Court only found, only decided the issue of breach of contract. That's correct, your honor. Not fiduciary duty or defalcation or the other issues. That's correct, your honor. I understand that, but the question is, once you have those factual findings that you're bound with, you take them. Is there a genuine issue for trial on the question of defalcation? I mean, that's the analysis. The bankruptcy court is not saying I find defalcation because of the prior proceeding. But it's taking the factual findings that from the prior proceeding, I now conclude as a matter of law that there was defalcation. That's the analysis, right? Actually, your honor, one of the issues we had in appeal is it didn't take those findings because there were none. All there were is a determination that they were joint ventures and there was a breach of contract. In order to find defalcation, you have to show at least recklessness and your state of mind. There's no state of mind determinations in the court below. And in the two separate transactions at issue, there are completely different circumstances. On the first transaction, first of all, it must be said, I mean, Doreen Snyder had no involvement here. She worked for, she did part-time work for- That may be a partner. There's a judgment. Well, she was a junior- She worked, she did, she's a partner. It does matter, your honor, because it goes back to intent. It goes back to intent. Just because you're a partnership, you're in a partnership, and there's a breach of contract, it doesn't necessarily mean there's a rise to a non-dischargeable debt. There still has to be fraud, defalcation, or recklessness. Not necessarily scienter, but intent. There's got to be a wrongful intent. Doreen Snyder's never involved. Never involved with the businesses at the time of these investments. Never involved with the investments. Doesn't even know they exist until years later. If you have a breach of fiduciary duty, isn't that a wrong? A mere breach of fiduciary duty is not non-dischargeable, your honor. There still has to be scienter. There still has to be some sort of, it's either a fraudulent breach of fiduciary duty, or when you're talking about defalcation, according to the Supreme Court, it's got to be gross negligence, recklessness. Still, you have to show some level of wrongful intent in order to have a debt declared non-dischargeable. And you're talking about someone who wasn't even involved in the businesses at the time, wasn't even involved in the subject transactions. How about making $20,000 and using it for your own purposes? Well, that's an allegation that was made against Stuart Snyder, your honor. Okay, and as to that allegation, he's doing something which we set forth in the papers that he's always done. Where for years prior, he paid from his business personal expenses and trued it up at the end of the year on a tax return, so it's not like he changed anything. When it came to the proceeds of the second investment. But it doesn't have anything to do with Doreen, your honor. She wasn't even involved in the businesses at that time. There's been no allegations of her involvement ever. Counsel, the Bankruptcy Court treated the Eastern District judgments as non-divisible. That is, Connecticut and New Jersey in one pile. Do you argue that we should look at them separately, the facts of them separately? The facts of the two- Of the New Jersey investment and the Connecticut investment? Yes, I did, your honor, and I do. There are two separate transactions. They're two different circumstances. The first transaction was $100,000 in December of 2005, transmitted directly into the trustee account of an attorney. Now, the appellees have always been coy about who that attorney's client was. But there's no dispute, it was a third party, another partner in that transaction, who then took the money, used it in that project, and the money was lost and the property was sold as lost. What about the other investment? The other investment, your honor, was $275,000 in August of 2016. That came into the business account of Stuart Snyder. So two separate transactions that, yes, have been conflated through these proceedings up until we get to the district court, which basically said, yes, there's a difference, but the conduct of the second transaction means that the first one is also non-dischargeable. So still, the district court isn't really making the distinction that needs to be made as far as the different actors, the different circumstances. My understanding. In any event, you have three minutes left for rebuttal. Thank you, your honor. We'll hear now from the appellee. Good morning, your honors. May it please the court. Mickey Hennessey from Westman Ball, Adam Miller, Zucker and Sharfstein for the appellee's story. Excuse me, Joseph and Nancy Murphy, a little nervous. Your honors, I think counsel for the appellants has underplayed the importance to note that the judgment did come from a sanction after what District Court Judge Underhill referred to and properly characterized as a farcical four years of litigation in which the appellants actively participated. But chose not to conduct discovery in good faith, didn't show up at hearings. Counsel throughout that period or only at the end? On and off during the case, counsel appeared. Counsel appeared in the middle of the case to move to vacate the first default judgment, which was vacated. And then, counsel asked for leave to be removed because they weren't paid. So there's misbehavior, and it's against this backdrop that the bankruptcy court and the district court properly did apply collateral estoppel to the Eastern District Court's findings. Both appellants are liable to the Murphys, the amount of the judgment. And in the bankruptcy court, we asked through summary judgment for the bankruptcy court to find the judgment accepted from discharge under 11 U.S.C. Sections 523, we said A2, A4, and A6. The bankruptcy court ruled on A4 and A6. And the Connecticut District Court affirmed, and we believe they did so properly in very well-reasoned decisions going through each of the elements. With respect- As I've just discussed with opposing counsel, the bankruptcy court and the district court treated this judgment as non-divisible. That is, New Jersey and Connecticut were together treated as one investment. Isn't that correct? I don't know if that's entirely correct, but I think that both the bankruptcy court and district court did properly rule that once you had the evidence in the record of the exception to discharge and that misbehavior, that to hold otherwise would improperly prejudice the creditors who have shown the statutory right to have that judgment accepted. Bad behavior only came from one of the investments. Isn't that correct? Well, we would submit, Your Honor, that the, especially the Connecticut District Court, properly found if you apply the elements, for example, for defalcation. Both courts properly found independently with their review of the record and the undisputed material facts that were presented, that the Sniders had fiduciary duties, not only for the partnership, also for superior knowledge. And as we discussed before, there was never a choice of law analysis. And if this case was analyzed under New Jersey law, there wouldn't have been a fiduciary relationship. Isn't that correct? I respectfully disagree, Your Honor. Tell me what you disagree with. I disagree first that it should be raised now when they had the full and fair opportunity to raise what choice of law should be applied to the determination in the underlying district court. When should it have been raised? It should have been raised if the choice of law, a breach of fiduciary duty claim was brought in connection with the Eastern District action, and they could have had a fair opportunity to say the choice of law is New York. The Eastern District only found that there was a breach of contract, not a breach of fiduciary duty, and never did a choice of law analysis as I read that decision. I agree, Your Honor, the court did not do a choice of law analysis. However, in that decision, although the court did not grant a judgment for a breach of fiduciary duty, the court in fact did find in the context of it that there was a breach of fiduciary duty. But I almost think it doesn't matter because both the bankruptcy court and the Connecticut District Court analyzed the fiduciary duty standards for purposes of 523A4 independently applying federal law. Judge Underhill in the Connecticut District Court found three bases, not only the partnership. You're arguing also, I gather, that the choice of law issue is waived. Yes, Your Honor. Because in essence they defaulted and did not appeal from the default judgment. Correct, Your Honor, yes. I also note with respect to the fiduciary duty that Judge Underhill noted the superior knowledge that both of the Snyders had to this industry. The Murphys, Nancy Murphy's a nurse. Joseph Murphy's retired at the time and still is, retired New York City Fire Department first responder. They didn't really know this industry. They trusted their close family members who said put the money here and put the money there. And with that fiduciary duty, the Snyders had a duty to care for that money. With respect to the first investment, they didn't care for it. And they were reliable for breach of contract, but we believe also that that should be accepted from discharge. And with respect to the second one, the bank records show as soon as the money came in, they had one job to buy a Bible Street property, but instead they started spending it here, there, and everywhere. Including yacht dues and personal expenses to the point within eight weeks it was gone. So that's the kind of thing that should be held accepted from discharge in a bankruptcy case, and it should be the entire judgment. Do you agree with your opposing counsel that New Jersey follows a different rule and it's limited to express trusts? I do not agree, Your Honor. I think that the bankruptcy judge, Chief Judge Manning, in a footnote in her decision, noted that even if you applied New York law, it would still be a fiduciary duty under the facts and circumstances of this case.  Yes. There is an argument for applying New Jersey law. That's where the investment was targeted, right? Well, Your Honor. That's where the money went. With respect to the first investment, Your Honor, with respect to the choice of law, the bankruptcy court sitting applying federal law is informed by state law. But that doesn't necessarily mean that they're so driven that they can't separately conclude under application of federal law of fiduciary duty. Federal law says you apply the state law where you're sitting or look at the contacts, the range of contacts. Isn't that what federal law teaches us? And where were the most contacts, Connecticut, New Jersey, or New York? That analysis was never done. And it's the appellant's fault. They didn't participate in the underlying action. They were sanctioned, despite four years of effort of litigation by the appellees in this case. But didn't they have a right to litigate it in the bankruptcy court? Your Honor, I think they raised it in the bankruptcy court, and the bankruptcy court considered it and concluded that even if you had applied New Jersey law, it's still a breach of fiduciary duty by the appellants. Judge Underhill in the Connecticut District Court cited cases. Both agree that there is no difference between, on this point, New Jersey law and New York law. I believe both courts have properly held that the Sniders have fiduciary duty, and it's soundly based. I feel I can't even articulate it as well as they can, and I refer to their decisions. Your Honor, the Supreme Court in Brogan versus Garner had the right of it. It's just as it's important to recognize Congress wants to give an honest and good faith debtor at discharge. What was the deal with respect to the first property? With respect to the first property, being in a position of trust, the Murphys directed their money where the Sniders told them to direct it. They had no idea they were directing it somewhere where the Sniders didn't have control of the investment. I think by them having control, there's also a deceit element in looking at defalcation. So I also think you can infer intent from the facts and circumstances, the undisputed material facts and circumstances presented by this record. Did the Sniders make money on the first investment? I'm not even sure, Your Honor. Did they lose as well? I believe counsel had said they may have also lost money on that investment. But they only misused funds, and counsel argued that it wasn't misuse, it was the way they did business. But they only misused funds from one of the investments, isn't that correct? Your Honor, it can't be the law that if you're found to be, you can embezzle a little. It can't be okay. There's bad faith conduct that- Weren't there two funds here? One for New Jersey, one for Connecticut? Your Honor, there were two investments that were given by the Murphys. Right. And one of them was allegedly earmarked for a Hawthorne project. The other one was supposed to be to buy a Bible Street property that was never purchased. We respectfully submit that the court properly applied the exception to discharge to the judgment that was ruled by the Eastern District Court of $450,000, that judgment. That was what the bankruptcy court was asked to determine whether it was accepted from discharge. And in a 22-page well-reasoned decision, she concluded that it was. And on appeal, in another 22-page well-reasoned decision, Judge Underhill affirmed. And for these reasons, we respectfully request that Your Honors also affirm those decisions. Thank you, Your Honor. Thank you, counsel. Mr. Drummore, you have three minutes for rebuttal. Thank you, Your Honor. In rebuttal, the district court, Your Honor, did make a finding that both parties had substantial knowledge in the construction business. And that's one of our points on appeal. There's nothing in the record that would ever suggest that Doreen Snyder had any knowledge of the construction business. In fact, all of the evidence that we submitted said that she did not. So the finding is not based anywhere in the record. So in addition, to follow up on Your Honor's point, Mr. Snyder describes the fact that he lost hundreds of thousands of dollars in these investments. In part because he was chasing the money trying to protect Mr. Murphy's investment. Continuing to do work for Mr. Maisel. Continuing to try to get the money back for both of them. But all this was decided in the Houston district, wasn't it? No, it was not, Your Honor. It was not. These findings, these are all findings that are in the affidavit. These were never issues that were adjudicated. Do you concede that the bank records show that they spent all the money within eight weeks on things that weren't intended by the investment? Including yacht club dues and that kind of thing? Yes, Your Honor, but with an explanation that's in the papers. My client's explanation for why, other than the money spent on the personal expenses, where it was spent, it was spent on New Jersey projects. I understand what the district, what the district court- Did the district court have any interest in those other projects? Yes, they did, Your Honor. They did, I realize that- Were there more than just these two? It's the same projects, Your Honor. It's Beacon and Pleasant Street. There's two spec houses in New Jersey. This particular investment was earmarked for a certain purpose, and the funds were not used for that purpose. Is that true? That is what the district court held, Your Honor. What I'm arguing- Is there any dispute about that? Is there any evidence to contradict that conclusion of the district court? Well, there is in the affidavit, Your Honor. I say that acknowledging the fact that that's what the district court held. And what my argument is, is that if we were appealing- But also what the court in the Eastern District found as well, by finding that they're awarding a breach of that particular contract. Awarding damages on that breach. The Eastern, that's what I'm referring to, Your Honor, is the Eastern District. I don't contradict that. What I'm saying, Your Honor, in my papers, is that if we're talking about fraud, wrongful intent, when we're talking in these grounds for non-dischargeability, in order to explain himself. In the end- If they're taking the money and spending it for purposes for which it was not intended, isn't that defalcation? I don't think it is as a matter of law, Your Honor. I think he gets the opportunity to explain himself. All right, and you've given us the explanation. That was his explanation? The explanation is in the papers, and I understand what the Eastern District held. And what he alleges is that that wasn't the deal. It's been a long time since I looked at this, but when there is a default judgment, you have the judgment. But then you look at the factual allegations that result in that judgment. And then those factual allegations are deemed admitted because of the default, and they can't be challenged. And that's how you come up with the $450,000 in damages. I believe, Your Honor, that they can be challenged when we're talking about adjudications of intent and my client's explanations for why he did what he did. It's a different question, but in terms of the amounts, whether there was a relationship, those factual underpinnings for the judgment, those cannot be challenged. And you can argue there wasn't intent, and then I agree that there has to be an independent analysis on whether, as a matter of law, there was the necessary intent. I agree, Your Honor, I've never challenged that. The argument here is all focused on intent, and whether you can adjudicate fraudulent, tortious intent on these non-dischargeable causes of action through these summary judgment proceedings. And our response is you can't do that, and it should go back to the bankruptcy court. Thank you. Thank you very much, Your Honors. Thank you both. We'll reserve decision.